```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------   X
                                                                         :
LAKISHA BRYANT, AS MOTHER AND NATURAL                                    :   15-CV-3762 (ARR)(CLP)
GUARDIAN OF INFANT I.K.; LOURETTE MATHURIN,                              :
AS MOTHER AND NATURAL GUARDIAN OF INFANT                                 :   NOT FOR ELECTRONIC
J.M.,                                                                    :   OR PRINT PUBLICATION
                                                                         :
              Plaintiffs,                                                :   OPINION & ORDER
                                                                         :
     -against-                                                           :
                                                                         :
MARK SEREBRENIK; FRANK STANKEVICIUS; LUIS                                :
FALCON; GREGORY JORDAN; MATTHEW COLON;                                   X
JOSEPH PALMIOTTO; JOHN and JANE DOE 1-10;
individually and in their official capacities,

              Defendants.
------------------------------------------------------------------------
```

ROSS, United States District Judge:

Plaintiffs, natural guardians of minors I.K. and J.M., allege four causes of action against defendant police officers: (1) unlawful stop and search, (2) false arrest, (3) denial of right to a fair trial and (4) failure to intervene. First Am. Compl., ECF No. 14, at ¶¶ 46-62. Before the court is defendants' motion for summary judgment. Notice of Mot. for Summ. J., ECF No. 35. Defendants raise affirmative defenses – probable cause and qualified immunity – to the first and second counts. Mem. of Law in Supp. of Defs.' Mot. for Summary Judgment, ECF No. 36 ("Defs.' Mem."), at 10-15, 19-21. Defendants also move for summary judgment on the third and fourth counts. Id. at 16-19. For the reasons that follow, this motion is granted in part and denied in part.

## BACKGROUND

The following is undisputed unless noted otherwise. On February 12, 2015, I.K. and J.M., high school students, boarded the B train with another friend, nonparty minor D.M. Defs.'

Stmt. of Undisputed Facts Pursuant to Local Civil Rule 56.1, ECF No. 37 ("Defs.' 56.1"), ¶¶ 7-8, 11; Pls.' Stmt. of Undisputed Facts Pursuant to Local Civil Rule 56.1, ECF No. 40 ("Pls.' 56.1"), at ¶¶ 7-8. 11. Defendants Mark Serebrenick ("Serebrenick") and Frank Stankevicius ("Stankevicius"), New York City police officers, were assigned to ride the B train leaving the Brighton Beach station at 3:05 p.m. Defs.' 56.1 ¶¶ 5, 12; Pls.' 56.1 ¶¶ 5, 12.

While the B train was stopped inside Brighton Beach station, Serebrenick and Stankevicius saw D.M. with his feet on a subway seat. Defs.' 56.1 ¶ 13; Pls.' 56.1 ¶ 13. The officers ordered D.M. to move his feed or exit the train, but D.M. did not comply. Defs.' 56.1 ¶¶ 14-15; Pls.' 56.1 ¶ 14-15.[1] D.M. refused to exit the train. Defs.' 56.1 ¶ 16; Pls.' 56.1 ¶ 16. Serebrenik called for assistance over the radio. Defs.' 56.1 ¶ 19; Pls.' 56.1 ¶ 19. In response, defendant officer Luis Falcon ("Falcon") and nonparty officer Elsa Sanchez entered the car. Defs.' 56.1 ¶ 20; Pls.' 56.1 ¶ 20.

The officers grabbed D.M. and attempted to carry him off the train. Decl. of Aimee K. Lulich, ECF No. 38 ("Lulich Decl."), Ex. J ("Video"), at 1:16-1:25. While on the train, D.M. was handcuffed. Defs.' 56.1 ¶ 23; Pls.' 56.1 ¶ 23. Around this time, defendant Matthew Colon ("Colon") arrived at the train. Defs.' 56.1 ¶ 24; Pls.' 56.1 ¶ 24. While officers escorted D.M. through the crowded train, J.M. walked directly behind the officers. Defs.' 56.1 ¶ 30; Pls.' 56.1 ¶ 30. J.M. repeatedly asked the officers why D.M. was being arrested. Id.

A group of people followed the officers off the train. Defs.' 56.1 ¶ 27; Pls.' 56.1 ¶ 27. During this time, defendant Joseph Palmiotto ("Palmiotto") arrived at Brighton Beach Avenue. Defs.' 56.1 ¶ 32; Pls.' 56.1 ¶ 32. Once outside the train station, officers placed D.M. in the back

---

[1] The parties dispute some details about the initial interaction between D.M. and the officers, but none of the disputed facts are relevant to the present motion.

2

seat of a marked patrol car. Defs.' 56.1 ¶ 33; Pls.' 56.1 ¶ 33. The individuals who had followed the officers off the train, and possibly others, crowded by the car, yelling at the officers. Defs.' 56.1 ¶ 35; Pls.' 56.1 ¶ 35. The officers began "crowd control" measures, giving verbal instructions to stay on the sidewalk and pushing back the gathered crowd. Defs.' 56.1 ¶ 36; Pls.' 56.1 ¶ 36.

Most of the crowd stayed on the sidewalk. Defs.' 56.1 ¶ 35; Pls.' 56.1 ¶ 35. J.M. stood in front of the car in which D.M. was detained. Video at 2:08-2:19; Defs.' 56.1 ¶ 37; Pls.' 56.1 ¶ 37. It is not clear from the record when J.M. entered the street, nor when I.K. joined him in front of the car. See id. The recording shows several people in addition to J.M. and I.K. standing in the road; it is also unclear when these other individuals left the sidewalk. Video at 2:28; 2:36-2:42; see also J.M. Dep., Lulich Decl., Ex. C at 45:04-08 (asserting that several others were in front of the patrol car); I.K. Dep., Lulich Decl. Ex. D, at 40:25-41:04 (same); but see Serebrenik Dep., Lulich Decl. Ex. E, at 46:10-15 (only three people were in front of the car); Stankevicius Dep., Lulich Decl. Ex. F, at 32:24-33:12 (only J.M. and I.K. were in front of the car). While in front of the car, J.M. repeatedly yelled, "What are you locking him up for?" Video at 2:13-2:16; Defs.' 56.1 ¶ 38; Pls.' 56.1 ¶ 38.

The parties dispute the following. According to defendants, multiple officers told J.M. and I.K. to step away from the car. Defs.' 56.1 ¶¶ 40-42. Plaintiffs dispute whether these orders were given, see Pls.' 56.1 ¶¶ 40-42, noting that "the scene was very loud and it was hard to hear anything," id. ¶ 58. Defendants admit that whether or not J.M. and I.K. heard the officers' orders is a disputed issue of fact. Defs.' Resp. to Pls.' Add'l Stmt. of Material Facts, ECF No. 43, at ¶¶ 9-11. According to plaintiffs, "[o]nce I.K. heard an officer tell him to get out of the street, I.K. was arrested while attempting to leave the street and before he could comply with the order."

3

Pls.' 56.1 ¶ 43. Plaintiffs also contend that the patrol car's engine was not running and no one was in the driver's seat. J.M. Dep., Lulich Decl., Ex. C at 44:7-10; but see Palmiotto Dep., Lulich Decl. Ex. I, at 19:23-20:04.

In the recording, one officer can be heard telling D.M. to "step away from the car" twice in rapid succession. Video at 2:19-2:21. It appears that D.M. complied with this order. Id. at 2:22. He was immediately arrested. Id. at 2:23-2:27. I.K. was subsequently arrested. Id. at 2:40-2:42.

J.M. and I.K. were taken to the precinct in a patrol car. Defs.' 56.1 ¶ 48; Pls.' 56.1 ¶ 48. Officer Serebrenik prepared a criminal complaint, which he provided to the prosecutor. See Decl. of Cary London in Supp. of Pls.' Opp'n to Defs.' Mot. for Summ. J., Ex. 11, ECF No. 41-10 ("Crim. Compl."). The district attorney charged J.M. and I.K. with obstructing governmental administration and resisting arrest. Defs.' 56.1 ¶ 50; Pls.' 56.1 ¶ 50. Both accepted adjournments in contemplation of dismissal at their arraignments. Defs.' 56.1 ¶ 51; Pls.' 56.1 ¶ 51. As a result of their arrests, I.K. was incarcerated for 21 hours and 18 minutes, and J.M. was incarcerated for 18 hours and 6 minutes. Defs.' 56.1 ¶¶ 52-52; Pls.' 56.1 ¶¶ 52-53. Neither J.M. nor I.K. attended court for this arrest after arraignment. Defs.' 56.1 ¶ 55; Pls.' 56.1 ¶ 55.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether a genuine issue exists that must be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1989)). "While genuineness runs to whether disputed factual issues can 'reasonably be resolved

4

in favor of either party,' materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Anderson, 477 U.S. at 250).

In assessing whether summary judgment is appropriate, I consider "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)). The moving party carries the burden of proving that no genuine dispute exists respecting any material fact, and it "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Celotex, 477 U.S. at 325). Once the moving party has met this burden, to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). A genuine issue is presented if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." Husser v. N.Y.C. Dep't of Educ., 137 F. Supp. 3d 253, 263 (E.D.N.Y. 2015). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing, e.g., Anderson, 477 U.S. at 255; Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)). A recording or videotape, however, may speak for itself. See Scott v. Harris, 550 U.S. 372, 378-81 (2007).

**DISCUSSION**

### A. Probable Cause[2]

To prevail on a claim for false arrest, a plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was aware of the confinement, (3) the confinement was without the plaintiff's consent, and (4) "the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)). "An officer need not necessarily have directly seized and handcuffed an individual to be liable for false arrest." Duncan v. City of N.Y., No. 11-cv-3901 (ENV) (JO), 2016 U.S. Dist. LEXIS 136340, at *23 (E.D.N.Y. Sep. 29, 2016); see Wong v. Yoo, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009) (police officer involved in the decision to arrest plaintiff "participated in plaintiff's arrest").

Probable cause to arrest "is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). "Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (alterations omitted) (quoting Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007)). Probable cause is assessed "objectively" based on "the facts known by the arresting officer at the time of the arrest." Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (citing Devenpeck v. Alford, 543 U.S. 146, 153 (2004)). Probable cause is a "fact-specific" inquiry. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

---

[2] Defendants direct their probable cause and qualified immunity defenses to plaintiffs' unlawful stop and search claim as well as their false arrest claim. See Defs.' Mem. at 10 n.1. Because "plaintiffs were not stopped or otherwise seized prior to their arrests," id., the following analysis applies to both the false arrest and the unlawful stop and search claims.

"An officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" Zellner, 494 F.3d at 369 (quoting Devenpeck v. Alford, 543 U.S. 146, 153 (2004)). Therefore, an officer may have probable cause to arrest without "awareness of a particular crime, but [with knowledge] that some crime may have been committed." Ackerson, 702 F.3d at 19 (emphasis added, quoting Wallace v. City of Albany, 725 N.Y.S. 2d 872, 873 (N.Y. App. Div. 2001)). Nor must the existence of probable cause be based only on facts known to a single officer. Zellner, 494 F.3d at 369. Under the "collective or imputed knowledge doctrine," an arrest "is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause . . . but sufficient information to justify the arrest . . . was known by other law enforcement officials initiating or involved with the investigation." Id. (quoting United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001)). Of course, "[i]n order for the collective knowledge doctrine to apply . . . there must have been some communication between the officers involved." Colon v. City of New York, No. 11-CV-0173 (MKB), 2014 U.S. Dist. LEXIS 46451, at *14, 2014 WL 1338730, at *4 (E.D.N.Y. Apr. 2, 2014).

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). However, "[i]f the issue of probable cause is 'predominately factual in nature,' then it is 'properly presented to the jury.'" Barksdale v. Colavita, 506 F. App'x 82, 84 (2d Cir. 2012) (quoting Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994)).

Defendants claim to have had probable cause to arrest J.M. and I.K. for two crimes: obstructing governmental administration and disorderly conduct. Defs.' Mem. at 12. Section

7

195.05 of the New York Penal Law defines the crime of obstructing governmental administration as follows:

> A person is guilty of obstructing governmental administration when he intentionally . . . prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.

N.Y. Penal. Law § 195.05. To commit the crime of obstructing governmental administration, a suspect must "act by one of three methods: (1) 'intimidation,' (2) 'physical force or interference,' or (3) 'any independently unlawful act.'" Uzoukwu v. City of New York, 805 F.3d 409, 414 (2d Cir. 2015) (quoting N.Y. Penal Law § 195.05). "It is axiomatic that 'only physical interference . . . is encompassed in the second method of obstruction.'" Id. (quoting People v. Case, 365 N.E.2d 872, 875 (N.Y. 1977)). Further, a necessary element of obstruction of governmental administration is "prevent[ing] or attempt[ing] to prevent the performance of an official function." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995).

Defendants have failed to establish that, as a matter of law, they had probable cause to arrest J.M. and I.K. for obstruction of governmental administration. The only "physical interference" the undisputed facts show is J.M. and I.K. "[standing] directly in front of the police car into which their friend D.M. had been placed." Defs.' Mem. at 14. Defendants claim there were four "official functions" J.M. and I.K. obstructed by this action: (1) "effecting the arrest of D.M.", (2) "keeping the street clear", (3) controlling the crowd, and (4) "driving the patrol car away." Id.

But the undisputed facts do not show probable cause to believe that J.M. and I.K. obstructed any of these functions by standing in front of a parked car for twenty to forty seconds. See Video at 2:08-2:42. First, the arrest of D.M. was complete by the time J.M. and I.K. stepped in front of the car. The second and third "official functions" cited by defendants ("keeping the

8

street clear" and "crowd control," Defs.' Mem. at 14) conflate obstruction of governmental administration with a failure to obey orders. See Dowling v. City of New York, No. 11-CV-4954(NGG)(RML), 2013 U.S. Dist. LEXIS 142108, at *12, 2013 WL 5502867, at *4 (E.D.N.Y. Sept. 30, 2013) (citing Jackson v. City of New York, 939 F. Supp. 2d 219, 229-30 (E.D.N.Y. 2013) ("Failing to obey a police order, in and of itself, does not constitute a circumstance that gives rise to probable cause for an arrest for obstructing government administration."). Further, the parties dispute (1) what orders were given and (2) whether or not D.M. and I.K. were attempting to obey the officers' instructions when they were arrested. Defs.' Mem. at 7; Decl. and Mem. of Law in Opp'n to Defs.' Mot. for Summary J., ECF No. 39 ("Pls.' Mem."), at 5; see also Video at 2:22-2:27 (showing J.M. beginning to walk away from the car a few seconds before he was arrested). Therefore, even if failing to obey the officers orders "create[d] some other hazard or interference" rising "to the level of obstruction necessary for obstructing governmental administration," Dowling, 2013 U.S. Dist. LEXIS 142108, at *13, 2013 WL 5502867, at *4, there is a factual dispute preventing summary judgment on this issue.

Finally, defendants assert that J.M. and I.K. blocked the path of the patrol car so that it could not drive away. Defs.' Mem. at 14. Disputed facts bear on whether, in fact, an officer was attempting to drive the car during the twenty to forty seconds J.M. and I.K. obstructed its path. Compare J.M. Dep., Lulich Decl. Ex. C, at 44:7-10, and Palmiotto Dep., Lulich Decl. Ex. I, at 19:23-20:04. Indeed, the recording shows several other people standing in the road, also obstructing the patrol car's exit path. See Video at 2:28; 2:36-2:42.

Nor have defendants shown that undisputed facts establish probable cause to arrest J.M. and I.K. for disorderly conduct. Defendants point to four parts of the disorderly conduct statute that J.M. and I.K. purportedly violated: (1) making an unreasonable noise; (2) obstructing

9

vehicular traffic; (3) refusing to obey a lawful order of the police to disperse; and (4) creating a hazardous condition by an act which serves no legitimate purpose. Defs.' Mem. at 14 (citing N.Y. Penal Law § 240.20).

The undisputed facts do not establish probable cause for any of these four offenses. First, "[t]he term 'unreasonable noise' means 'a noise of a type or volume that a reasonable person, under the circumstances, would not tolerate.'" Provost v. City of Newburgh, 262 F.3d 146, 159 (2d Cir. 2001) (quoting People v. Bakolas, 449 N.E.2d 738, 740 (N.Y. 1983)). While J.M. did repeatedly shout questions at the officers, he was not appreciably louder than the gathered crowd. See Video at 2:13-2:16. Indeed, a reasonable person could understand that he had "raised his voice . . . only to the extent it was necessary to do so to be heard" over the crowd. Bakolas, 449 N.E.2d at 740.

Second, as explained above, a jury would not be compelled to find that the passage of the driverless police car was obstructed. Nor does standing in front of a parked car necessarily create a "hazardous condition." Finally, as also explained above, a jury could agree with plaintiffs that the officers' dispersion order was either not given or that J.M. and I.K. had no opportunity to comply before they were arrested. Therefore, summary judgment is not warranted on the grounds that there was probable cause to arrest J.M. and I.K.

### B. Qualified Immunity

The qualified immunity defense protects officers where probable cause to arrest cannot be established, but "it was objectively reasonable for officers to believe they did have probable cause." Zellner, 494 F.3d at 369. The Second Circuit refers to this standard as "arguable probable cause." Id. Arguable probable cause exists if "officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d

Cir. 2004) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). "Arguable probable cause must not be misunderstood to mean 'almost' probable cause." Zellner, 494 F.3d at 370 (quoting Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007)). "If officers of reasonable competence would have to agree that the information possessed by the officer at the time of the arrest did not add up to probable cause, the fact that it came close does not immunize the officer." Jenkins, 478 F.3d at 87.

Arguable probable cause is a fact-specific inquiry. A court must analyze "the facts known to the officer at the time of the arrest," Coons v. Casabella, 284 F.3d 437, 441 (2d Cir. 2002), and "evaluate the objective reasonableness of the [defendants'] conduct 'in light of the information the . . . officers possessed,'" Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). See also Kerman v. City of N.Y., 261 F.3d 229, 239-40 (2d Cir. 2001) (citing Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)) ("[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

The same disputed facts that prevent defendants from establishing probable cause also doom their qualified immunity defense at this stage. Disputed facts bear on whether a reasonable officer would conclude that probable cause existed, such as whether or not the patrol car was trying to leave the scene and whether or not J.M. and I.K. were attempting to comply with the officers' orders when they were arrested. Therefore, summary judgment is not warranted on the grounds of qualified immunity.

### C. Denial of Fair Trial

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair

trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); see also Gomez v. City of New York, No. 14-CV-2621(ILG)(CLP), 2016 U.S. Dist. LEXIS 59868, at *6-7, 2016 WL 2591883, at *3 (E.D.N.Y. May 5, 2016) (quoting Abreu v. City of New York, No. 04-CV-1721(JBW), 2006 U.S. Dist. LEXIS 6505, at *16, 2006 WL 401651, at *6 (E.D.N.Y. Feb. 22, 2006)) (reconsideration denied, No. 14-CV-2621(ILG)(CLP), 2016 WL 4411335 (E.D.N.Y. Aug. 18, 2016). The constitutional violation occurs at the moment false information is transmitted to prosecutors. Ricciuti, 124 F.3d at 127, 130 (denying summary judgment on fair trial claim where all criminal charges were dismissed before trial). Therefore, a plaintiff need not have been tried or convicted to assert a fair trial claim. "A plaintiff establishes a denial of fair trial claim when a police officer (1) 'creates false information likely to influence a jury's decision', (2) 'forwards that information to prosecutors', and (3) the plaintiff is deprived of her liberty as a result." Buie v. City of New York, No. 12-CV-4390(RJD)(CLP), 2015 U.S. Dist. LEXIS 147642, at *24, 2015 WL 6620230, at *9 (E.D.N.Y. Oct. 30, 2015) (alterations omitted) (quoting Ricciuti, 124 F.3d at 130).

As an initial matter, there is no evidence in the current record that defendants Stankevicius, Falcon, Colon or Palmiotto participated in the creation of the criminal complaint, which purports to recount Serebrenik's personal knowledge. See Crim. Compl. Therefore, summary judgment on this claim is denied with respect to Serebrenik and granted with respect to the remaining defendants.

1. **False Information Likely to Influence a Jury's Decision**

The parties dispute whether or not Serebrenik provided false statements in the complaint provided to the prosecutor. The complaint includes the following:

> Deponent [(Serebrenik)] observed [J.M. and I.K.] standing in front of deponent's marked New York Police vehicle, in which deponent had placed [D.M.], preventing deponent from transporting [D.M.] in said vehicle. . . . Deponent told [J.M. and I.K.] to move away from said police vehicle and onto the sidewalk, and that [J.M. and I.K.] refused to do so, and that defendants began shouting and cursing at deponent and at other uniformed New York City Police officers [before they were arrested].

Crim. Compl. Plaintiffs have identified facts suggesting that some of these statements may be false. For example, plaintiffs deny that the officers told defendants to step onto the sidewalk. Pls.' 56.1 at ¶¶ 40-42. Indeed, no order to step onto the sidewalk can be heard in the recording. Furthermore, the recording shows that I.K. did not curse at officers until after he was arrested, Video at 2:40-2:42 – and J.M. is not heard cursing at all.

Defendants argue that the allegedly false information was not "likely to influence a jury's decision" because it is contained in a criminal complaint, which would have been inadmissible hearsay if the charges against J.M. and I.K. had gone trial. Defs.' Mem. at 16-17. But this argument misconstrues Ricciuti's requirement that a fair trial claim be predicated on "false information likely to influence a jury's decision." 124 F.3d at 130. The phrase "likely to influence a jury's decision" refers to the materiality of the information, not its likelihood to be presented to a jury. Garnett v. Undercover Officer C0039, No. 1:13-CV-7083-GHW, 2015 U.S. Dist. LEXIS 45232, at *23, 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015) ("Garnett I"), aff'd, -- F.3d --, 2016 WL 5496761 (2d Cir. Sept. 30, 2016) ("Garnett II"); see also Long v. Vazquez, No. 14-CV-9908(VEC), 2016 U.S. Dist. LEXIS 1048347, at *14, 2016 WL 4203545, at *4 (S.D.N.Y. Aug. 8, 2016) ("Defendant's argument conflates the causation and materiality elements of a fair trial claim.").

I therefore follow Garnett, and the majority of district courts in this circuit, in allowing fair trial claims to proceed based on allegedly false information in a criminal complaint. See,

13

e.g., Marom v. City of New York, No. 15-CV-2017(PKC), 2016 U.S. Dist. LEXIS 28466, at *71, 2016 WL 916424, at *9 (S.D.N.Y. Jul. 29, 2016); Buie, 2015 U.S. Dist. LEXIS 147642, at *25-30, 2015 WL 6620230, at *11; Brown v. City of New York, No. 08-CV-5095(FB)(MDG), 2013 U.S. Dist. LEXIS 47035, at *17-19, 2013 WL 1338785, at *6 (E.D.N.Y. Apr. 1, 2013); Struthers v. City of New York, No. 12-CV-242, 2013 U.S. Dist. LEXIS 76916, at *46-47, 2013 WL 2390721, at *13 (E.D.N.Y. May 31, 2013).

I conclude that the allegedly false statements in the criminal complaint are sufficiently material to deny Serebrenik summary judgment on his fair trial claim. "[T]he alleged fabrications are central to the question of whether [defendants] had probable cause to arrest plaintiff[s] and, thus, would likely influence a jury" were plaintiffs to be tried for the offenses for which they were arrested. Jean-Laurent v. Bowman, No. 12-CV-2954 (KAM)(LB), 2014 U.S. Dist. LEXIS 131639, at *8-10, 2014 WL 4662232, at *3 (E.D.N.Y. Sept. 18, 2014).

### 2. Deprivation of Liberty

With respect to the third element of a fair trial claim, defendants contend that "plaintiffs did not suffer any post-arraignment deprivation of liberty" because they "accepted adjournments in contemplation of dismissal . . . and neither was required to attend court again." Defs.' Mem. at 16; see also Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J., ECF No. 42 ("Defs,' Reply"), at 9-10. However, because a criminal defendant's right to a fair trial is violated at the moment an officer forwards material false information to a prosecutor, Ricciuti, 124 F.3d at 130, "[c]ourts in this Circuit have ruled that a plaintiff's accepting an adjournment in contemplation of dismissal does not preclude a fair trial claim," Buie, 2015 U.S. Dist. LEXIS 147642, at *24 n.12, 2015 WL 6620230, at *9 n.12 (alterations omitted) (quoting Apostol v. City of New York, No. 11-CV-3851(RRM)(CLP), 2014 U.S. Dist. LEXIS 40487, at *18, 2014 WL

14

1271201, at *5 (E.D.N.Y. Mar. 26, 2014)).

Finally, defendants argue that damages for the fair trial claim would be duplicative of any damages plaintiffs might be awarded for their false arrest claim, Defs.' Reply at 9, because "damages for false arrest are to compensate for injuries from the beginning of custody to arraignment," Bender v. City of New York, 78 F.3d 787, 793 n.3 (2d Cir. 1996), and J.M. and I.K. suffered no post-arraignment deprivation of liberty.

The fact that damages for these two claims might be duplicative does not warrant summary judgment on the fair trial claim. The Second Circuit allows duplicative claims to proceed. See Brandon v. City of N.Y., 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010). In fact, if multiple, overlapping constitutional torts are proven, the court does not necessarily require the jury to apportion damages among the various claims. See Davis v. Velez, 797 F.3d 192, 213 (2d Cir. 2015) (affirming district court judgment where "[t]he jury found all three of [plaintiff's] § 1983 claims ([for false arrest, malicious prosecution and denial of a fair trial]) proven . . . [and] was not asked to apportion an award of its damages against a given defendant among the theories of liability").

Furthermore, these claims do not overlap completely. Defendants may prevail on their probable cause or qualified immunity defenses at trial, defeating plaintiffs' false arrest claim. But probable cause and qualified immunity are not defenses to a denial of fair trial claim. See Garnett II, 2016 WL 5496761, at *10 ("[P]robable cause is no defense to a denial of fair trial claim."); Ricciuti, 124 F.3d at 130 ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee."). In that case, plaintiffs would be entitled to damages for the fair trial claim but not the false arrest claim. Therefore, summary judgment on the denial of fair trial claim is

15

granted with respect to defendants other than Serebrenik.

   D. **Failure to Intervene**

"All law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Coggins v. City of Nassau, 988 F. Supp. 2d 231, 245 (E.D.N.Y. 2013), aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora, 776 F.3d 108 (2d Cir. 2015) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). An officer may be held liable for his failure to intervene if he observes the constitutional violation and "has sufficient time to act to prevent it." Figueroa v. Mazza, 825 F.3d 89, 106 (2d Cir. 2016) (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)). "Whether an officer can be held liable on a failure to intervene theory is generally a question of fact for the jury to decide." Decayette v. Goord, No. 9:06-CV-0783(TJM/GHL), 2009 U.S. Dist. LEXIS 134104, at *18, 2009 WL 1606753, at *8 (N.D.N.Y. June 8, 2009) (citing Anderson, 17 F.3d at 557).

As a preliminary matter, defendants note that "there is no evidence that Officers Falcon, Colon, or Stankevicius, or Lt. Palmiotto, had any realistic opportunity to intervene" in Serebrenik's alleged fabrication of evidence or his decision to communicate the allegedly fabricated evidence to the prosecutor. Defs.' Reply at 10. This appears to be correct based on the current record. However, the court recognizes that this argument was raised for the first time in defendants' reply brief and will reconsider this ruling at plaintiffs' request. See Ernst Hass Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999) (per curiam). As the direct participant in the alleged fabrication of evidence, Serebrenik cannot be liable on a failure to intervene theory. See Jackson v. City of New York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013). Therefore, summary judgment is granted with respect to the failure to intervene relating to the

16

fair trial claim.

With respect to the failure to intervene relating to the false arrest claim, defendants raise two arguments. First, defendants argue that because "plaintiffs' Constitutional rights were not violated . . . they cannot maintain a failure to intervene claim." Defs.' Mem. at 18. As explained above, I cannot find as a matter of law that plaintiffs' constitutional rights were not violated.

Second, defendants argue that "[i]f a defendant is liable for committing a Constitutional violation under a theory of direct participation, that defendant cannot also be liable for failure to intervene." Id. at 19. However, the undisputed facts do not allow the court to determine which officers should be liable as direct participants and which as non-intervenors. See Duncan v. City of New York, No. 11-CV-3901(ENV)(JO), 2016 U.S. Dist. LEXIS 136340, at *47 (E.D.N.Y. Sept. 29, 2016) (recommending denial of summary judgment on failure to intervene claim where "it cannot yet be determined which defendants [directly participated in the underlying arrests] and which did not").

## CONCLUSION

For the preceding reasons, the summary judgment motion by defendants Falcon, Colon, Stankevicius, and Palmiotto is granted on the fair trial claim, and the summary judgment motion by all defendants is granted on any failure to intervene claim relating to the fair trial claim; the motion is denied in all other respects.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:	October 28, 2016
	Brooklyn, New York

17